## Bauer *v.* Byrd, Appellant (No. 1).

*Contracts—Leases—Construction—Agreement to furnish steam —Intention—Evidence—Equity—Injunction.*

1. In a suit in equity to restrain defendant, plaintiffs' landlord, from cutting off steam or power, and from interfering with or removing the pipes and connection which furnished steam to plaintiffs' laundry, it appeared that plaintiffs' lease provided that "the said lessor shall furnish to the said lessees, without charge, live steam pressure through a one-inch pipe as constructed from the boiler room at the present time"; that at the time of the execution of the lease the steam pipe in use was a one and one-half inch pipe, which pipe defendant intended to remove and replace by a one-inch pipe. Plaintiffs contended that the pipe which was in use at the time of the execution of the lease must remain unchanged, and could not be replaced by a one-inch pipe. The lease was under seal and there was no allegation or proof of fraud, accident or mistake in the preparation or execution of the lease. The lower court granted the relief prayed for. *Held,* that plaintiffs were entitled to receive steam through a one-inch pipe and in an amount sufficient to meet the reasonable requirements of plaintiffs' business based upon conditions contemplated when the lease was made, provided such supply could be furnished through a one-inch pipe, and a decree was entered dismissing the bill.

2. In such case where the lease contained no provision fixing the number of pounds pressure which defendant was required to maintain in furnishing live steam it was competent to prove how much steam was being furnished when the lease was made, and how much defendant continued to furnish after it went into effect, for the purpose of showing what the intention of the parties was and how they construed their own contract.

Argued Jan. 16, 1914.  Appeal, No. 166, Jan. T., 1913, by defendant, from decree of C. P. No. 5, Philadelphia Co., June T., 1912, No. 4368, granting injunction in case of Louis C. Bauer and James Warnock, trading as The American Laundry, v. John Byrd.  Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Reversed.

Bill in equity for an injunction.  Before RALSTON, J. The opinion of the Supreme Court states the facts.

The court on final hearing awarded the injunction as prayed for in the bill.  Defendant appealed.

*Errors assigned* were the decree of the court, and in dismissing various exceptions to the findings of fact and law of the trial judge.

*Ira J. Williams,* of *Simpson, Brown & Williams,* with him *Joseph P. Gaffney,* for appellant.

*Joseph R. Embery,* for appellees.

OPINION BY MR. JUSTICE ELKIN, March 2, 1914:

This is the kind of a case in which the interested parties are in much better position to settle their own differences, if they approached the subject in a proper spirit, than the courts can settle those differences for them by undertaking to determine the true meaning of the contract made by the parties but about which they cannot agree.  When capable business men reduce their agreements to writing, and then disagree about the meaning of their own written instrument, it is difficult,

for courts to accurately define and exactly enforce their covenants according to the true intent of the parties, when the writing leaves the question in doubt. But when the contracting parties will not or cannot agree, and resort to the courts for the enforcement of their legal rights, it becomes the duty of the courts in considering the case to give due weight to the pleadings, the written instrument and the surrounding circumstances, in determining what those rights are and how they shall be enforced. This is a proceeding in equity, which follows the law, and since the law of a contract is the agreement of the parties, it is essential to first ascertain what those rights are, before equity will provide the remedy to enforce them. The bill filed in this case prayed for an injunction to restrain defendant from cutting off the steam or power, and from interfering with or removing the pipes and connections which furnished steam to the laundry of appellees. The lease in question provides as follows: "The said lessor shall furnish to the said lessees, without charge, live steam pressure through a one-inch pipe as constructed from the boiler room at the present time." It is averred, that at the time of the execution of the 1911 lease, the pipe which connected the boiler room to the premises occupied by the lessees, and through which, live steam was furnished, was one and one-half inches in diameter. It is therefore urged that inasmuch as the pipe in dispute here at the time of the execution of the 1911 lease, was one and one-half inches in diameter, it must remain unchanged, and cannot be replaced by a one-inch pipe, although the lease in express terms provides that the live steam shall be furnished through a one-inch pipe. The lease is under seal and was signed in the presence of a witness. It was attached to and made part of the bill of complaint filed in this case. There is no allegation or proof of fraud, accident or mistake in the preparation and execution of the lease. The person who prepared the lease testified that the clause requiring live steam to be furnished through a

one-inch pipe was inserted by the direction and with the approval of Byrd, the lessor, and Warnock, one of the lessees, who was present when the terms were agreed upon. Bauer, the other lessee, admits in his testimony that he told Byrd a one-inch pipe would be sufficient. After the lease was prepared, and prior to its execution, copies were submitted to all of the interested parties, who thus knew or had the opportunity to know, what it contained before signing their names. The lease says that live steam shall be furnished through a one-inch pipe, and the written instrument is corroborated by the testimony of the parties who signed it and of the stenographer who prepared it. The only answer appellees make as to the execution of the lease is that they were careless in signing. This is not sufficient. Under these circumstances, the express provisions of the lease relating to the one-inch pipe must be accepted as binding upon the parties, unless our eyes are closed to what was so plainly written, and we declare as a matter of law that although the contract in unambiguous language says one thing, it means something else. We find nothing in this record to warrant such a conclusion. It necessarily follows that the decree in so far as it requires appellant to furnish live steam through a one and one-half-inch pipe is erroneous. Under the contract all that can be required of appellant is to furnish steam through a one-inch pipe.

We fully agree with the learned court below that nothing contained in the leases of 1909 and 1911 definitely fixed the number of pounds pressure which the appellant was required to maintain in furnishing live steam. The lease of 1906 did contain such a provision but this was omitted in the subsequent leases. What the lease of 1911 did require was that the lessor should furnish live-steam pressure through a one-inch pipe to the laundry of appellees. It is silent as to the amount of pressure to be maintained. Hence, the contract not having specified any amount of pressure, it was compe-

tent to prove how much steam was being furnished when the lease was made, and how much appellant continued to furnish after it went into force, for the purpose of showing what the intention of the parties was and how they construed their own contract in respect to the furnishing of steam. The lessees were in the laundry business which was conducted on the leased premises. Appellant in consideration of the stipulated rental agreed to furnish live steam for the use of appellees in their business. The parties had in contemplation the conditions as they existed on the premises at the time the lease was made, and also the installation of such additional machinery as was suggested at that time, as the basis of their contractual relations, and unless they expressly provided otherwise in the lease of 1911, as they did in respect to the diameter of the pipe, the only reasonable inference is that they intended the conditions then existing, with such changes and additions as were then agreed upon, to continue during the term of the new lease. Appellees need live steam to conduct their laundry business, and it is made the duty of appellant under the lease to furnish that steam. How much is not definitely fixed, but as we view the situation, appellant is obliged to furnish a sufficient amount of steam to meet the reasonable requirements of appellees in their laundry business, based upon conditions existing or contemplated when the lease of 1911 was made, if the same can be furnished through a one-inch pipe. Why the parties agreed to take steam through a one-inch pipe, we do not know, and this record does not inform us, but it is so written in their contract and we cannot disregard it.

We, therefore, are constrained to hold that it was error to decree that the appellees are entitled to receive live steam through a one and one-half-inch pipe connecting the boiler with the machinery on the leased premises. What they are entitled to receive is live steam through a one-inch pipe, and in an amount sufficient to meet the reasonable requirements of their business,

based upon conditions as hereinbefore stated, if that can be done through a one-inch pipe.

Decree reversed and bill dismissed at the cost of appellees.